## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

MAUREEN FRANCIS,
an individual,

       Case No.:

     Plaintiff,

v.

CITIBANK, N.A.,
a national association,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

     Defendants.

_____/

## **COMPLAINT**

**COMES NOW**, Plaintiff, MAUREEN FRANCIS (hereinafter, "Plaintiff"), by

and through the undersigned counsel, and hereby files this Complaint against

Defendants, CITIBANK, N.A. (hereinafter, "Citibank"), EQUIFAX

INFORMATION SERVICES LLC (hereinafter, "Equifax"), EXPERIAN

INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), and TRANS

UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants").

In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.     This is an action brought by an individual consumer for damages for Citibank's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Citibank improperly credit-reported and subsequently verified its credit reporting of an alleged balance owed on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Equifax, Experian, and TransUnion that was created or allegedly incurred as a result of identity theft and fraud.  More specifically, despite Plaintiff repeatedly advising Citibank that she did not make or consent to the charges incurred on her credit card account, did not authorize the charges, and did not benefit from the purchases made in any way— and after Plaintiff disputed Citibank's reporting of such erroneous information directly to Equifax, Experian, and TransUnion— Citibank *continued* to report such account with a fraudulent and significant balance due and past-due.

2.     This is also an action for damages for Citibank's violations of the Florida Consumer Collection Practices Act, Chapter 559 Florida Statutes (hereinafter, the "FCCPA"), wherein Citibank communicated with Plaintiff in an attempt to collect a consumer debt Defendant knew was not legitimately owed by Plaintiff because Citibank knew that the alleged balance was created as a result of identity theft and fraud.

3.     Furthermore, this is an action for damages for Equifax's, Experian's, and TransUnion's violations of the FCRA wherein Equifax, Experian, and Trans Union each continued to incorrectly report Plaintiff as the individual responsible for the

2

alleged balance on the Citibank account after Plaintiff repeatedly disputed and advised that any balance allegedly owed was a result of identity theft and fraud, and after Plaintiff provided information to Equifax, Experian, and Trans Union in support of her disputes, including but not limited to police reports.

## JURISDICTION, VENUE & PARTIES

4.     Jurisdiction of this Court arises under 28 United States Code, Section 1331, pursuant to the FCRA, 15 United States Code Section 1681, et seq.  The Court has supplemental authority over Plaintiff's FCCPA claims pursuant to 28 United States Code, Section 1367.

5.     Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

6.     Venue is proper in this District as the acts and transactions described herein occur in this District.

7.     At all material times herein, Plaintiff is a natural person residing in Lake County, Florida.

8.     At all material times herein, Citibank is a national association with its principal place of business located at 5800 South Corporate Place, Sioux Falls, SD 57108.

9.     At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

10.    At all material times herein, Experian is a for-profit corporation existing

under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

11.     At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

12.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

13.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

14.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

15.     Under the FCRA, when a consumer reporting agency conducts any

reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

16.   Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

17.   Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

18.   Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not

more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

19.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## FCCPA STATUTORY STRUCTURE

20.    The FCCPA is a state consumer protection statute, modeled after the federal FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

21.    The FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts. Fla. Stat. § 559.55(5).

22.    Specifically, the FCCPA prohibits unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." Fla. Stat. § 559.55(2) (emphasis added).

23.    For example, the FCCPA prohibits a person from collecting consumer

debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debt and prohibits a person from attempting to collect a consumer debt that is known to be illegitimate. See Fla. Stat. § 559.72(7) and (9).

## GENERAL ALLEGATIONS

24.    At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by the FCCPA, Section 559.55(8) because she is an individual and allegedly obligated to pay a debt

25.    At all material times herein, Plaintiff is an alleged "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

26.    At all material times herein, Citibank, itself and through its subsidiaries, regularly extends credit cards—and credit reports debts associated with the same— allegedly owed by consumers residing in Lake County, Florida.

27.    At all material times herein, Citibank attempts to collect an alleged balance on a consumer credit card account that was incurred as a result of identity theft and fraud, referenced by account number ending   -4466, -0755, and/or -0766 (hereinafter, the "Alleged Debt" or the "Account").

28.    At all material times herein, Plaintiff did not make the charges that resulted in the Alleged Debt, did not authorize the creation of the charges, and did not receive the benefit of any good or services as a result of any transactions made creating the Alleged Debt.

29.    At all material times herein, Citibank, in the ordinary course of business,

regularly extended open-end consumer credit, pursuant to a credit card, on which Citibank assessed finance charges.

30.   At all material times herein, Citibank's conduct, with respect to the Alleged Debt complained of below, qualifies as "communication" as defined by the FCCPA, Section 559.55(2).

31.   At all material times herein, Citibank sent written correspondence to Plaintiff in an attempt to collect the Alleged Debt.

32.   At all material times herein, Citibank is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

33.   At all material times herein, Citibank furnishes information to Equifax, Experian, and Trans Union regarding the Account and the corresponding Alleged Debt referenced by account number ending in -0755 and/or -0766 (hereinafter, the "Account").

34.   At all material times herein, Citibank furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

35.   At all material times herein, Equifax, Experian, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling,

evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax, Experian, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

36.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

37.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

38.     During 2019, Plaintiff applied for and obtained a Sears credit card account issued by Citibank, with an original account number ending -4466.

39.     During or about March 2019, upon information and belief, Plaintiff used the original credit card account for her own personal use and benefit for the last time.

40.     Between April and May 2019, Plaintiff paid off any balance owed on the original account in full.

41.     Between approximately December 2019 and October 2020, an unknown third-party or third-parties regularly used Plaintiff's Sears credit card account without Plaintiff's knowledge, permission, or consent.

42.     Additionally, between approximately December 2019 and October 2020, an unknown third-party or third-parties made payments—or purported payments— to Citibank on  Plaintiff's credit card account.

43.     Upon information and belief, in February 2021, Citibank reversed all

purported payments made on the credit card account by unknown parties since December 2019, added interest charges, and added fees, resulting in a new alleged balance totaling $133,225.24 (i.e., the Alleged Debt).

44.    Between December 2019 and November 2022, Plaintiff did not receive any monthly billing statements from Citibank showing the charges, payments, or reversed payments and had no knowledge of the fraudulent charges or Alleged Debt until November 2022.

45.    In other words, between December 2019 and November 2022, Citibank never contacted Plaintiff regarding the Alleged Debt.

46.    During or about November 2022, Plaintiff applied for a loan with Fidelity Funding Mortgage and was denied due to Citibank's reporting of a tradeline account (i.e., the Account).

47.    More specifically, following the credit denial, Plaintiff learned that Citibank reported the Account with a balance owed in excess of $133,000.00 to Equifax, Experian, and Trans Union.

48.    After Plaintiff learned of the Alleged Debt and Account, Plaintiff disputed the legitimacy of the Alleged Debt directly with Citibank, wherein Plaintiff advised Citibank that she did not make, authorize, or consent to the fraudulent charges made on the Account.

49.    As a result, Citibank knew that Plaintiff did not incur the charges personally, knew that the charges were made from identity theft and fraud, and therefore possessed knowledge that the Alleged Debt was not legitimately owed by

Plaintiff.

50.     In or around January 2023 and in response to Plaintiff's dispute, Citibank sent Plaintiff several monthly billing statements for Account numbers ending -4466, -0755, and -0766 purportedly corroborating Plaintiff's obligation to pay the Alleged Debt. Please see attached a true and correct copy of Citibank's Billing Statements labeled as Composite Exhibit "A."

51.     Citibank sent the immediately-aforementioned billing statements in an attempt to collect the Alleged Debt from Plaintiff.

52.     Citibank sent the above-referenced billing statements despite Citibank possessing knowledge that the Alleged Debt was not legitimately owed by Plaintiff.

53.     Plaintiff did not recognize account numbers ending in -0755 and -0766, and Plaintiff had not seen such billing statements until January 2023.

54.     As such, Citibank either changed the underlying account number, or in the alternative, Citibank accounts were opened in Plaintiff's name without her consent and without her knowledge.

55.     Notably, the billing statements showing fraudulent charges and payments were purportedly sent to an address in New Jersey where Plaintiff has never resided or received mail.

56.     Upon information and belief, the unknown third party or third parties committing identity theft and fraud changed the underlying account address so Plaintiff would not receive copies of the monthly billing statements, and therefore, Plaintiff would not be able to identify the ongoing fraudulent activity on her credit card

Account.

57.     Based upon the monthly statements, fraudulent, unauthorized charges began taking place in December 2019, including large purchases made at stores Plaintiff had never visited or patronized.

58.     For example, despite Plaintiff not owning, leasing, or renting a vehicle, several purchases had been made for fuel at gas stations.

59.     Additionally, the charges were made in states where Plaintiff was not located, such as California and New Jersey.

60.     To the extent that charges were made on the Account resulting in an alleged balance due (i.e., the Alleged Debt), Plaintiff did not make any such charges herself, Plaintiff did not authorize any other individual or entity to make charges for themselves or on Plaintiff's behalf, and Plaintiff did not receive the benefit of any goods or services as a result of charges made on the Account.

61.     On or about December 10, 2022, Plaintiff filed a police report with the Clermont, Florida Police Department regarding identity theft and the fraudulent charges made on the Account referenced by police report incident number 22-C-35248, in which Plaintiff agreed to prosecute the perpetrator(s) if identified.

**DEFENDANTS' CREDIT REPORTING OF THE
ACCOUNT AND PLAINTIFF'S DISPUTES PURSUANT TO THE FCRA**

62.     In December 2022 and January 2023, Plaintiff obtained copies of her consumer disclosure reports as maintained by Equifax, Experian, and Trans Union.

63.     As of December 2022 and January 2023, Citibank, Equifax, Experian,

and Trans Union reported the Account as owed by Plaintiff personally with a balance due and past-due in the amount of $136,149.00.

64.    In January 2023, Plaintiff disputed the fraudulent Account charges directly to Citibank.

65.    On or about February 1, 2023, Citibank sent a letter to Plaintiff in response to her dispute.

66.    Citibank's letter dated February 1, 2023 stated that Plaintiff had enrolled in paperless statements on November 21, 2019 and that a new card had been sent to Plaintiff in 2020.

67.    To be clear, Plaintiff did not request or receive a new card from Citibank in 2020 and did not receive a new credit card from Citibank in 2020.

68.    Furthermore, Citibank acknowledged the fraudulent nature of charges made on June 20, 2020 and stated that payments had been made on the Account.

69.    On or about February 17, 2023, Plaintiff filed an identity theft report with the Federal Trade Commission, identified by dispute and/or file number 154306158.

70.    Between the months of January 2023 and March 2023, Plaintiff disputed the reporting of the Account to Equifax *at least* three times.

71.    During March 2023, Plaintiff disputed the reporting of the Account to Experian *at least* two times.

72.    Between the months of December 2022 and March 2023, Plaintiff disputed the reporting of the Account to Trans Union *at least* three times.

73.    On or about March 7, 2023, Plaintiff obtained her consumer disclosure

reports as maintained by Equifax, Experian, and Trans Union.

74.     Despite Plaintiff's repeated disputes, Citibank and Equifax continued to report the Account as owed by Plaintiff personally with a balance due in the amount of $136,149.00 and a $136,149.00 balance past-due.

75.     Likewise, despite Plaintiff's repeated Citibank and Experian continued to report the Account as owed by Plaintiff personally with a balance due in the amount of $136,149.00 and a $136,149.00 balance past-due, as 180 days past due in January 2021, and as charged-off for all months following January 2021.

76.     Similarly, despite Plaintiff's repeated disputes, Citibank and Trans Union continued to report the Account as owed by Plaintiff personally with a balance due in the amount of $136,149.00 and a $136,149.00 balance past-due, as 120 days late in January 2021 and February 2021, and as charged-off for all months following February 2021.

77.     Defendants' reporting of the Account with a balance due or past-due in excess of $0.00 is inaccurate because any alleged balance owed was the result of identity theft and fraud.

78.     Additionally, Citibank, Equifax, Experian, and Trans Union reported the Account with derogatory and late payment information.

79.     To be clear, Plaintiff made all payments to her original Account at the time she actually used the Account for purchases.

80.     Defendants' reporting of historical or current late payment information is inaccurate because any alleged balance owed was the result of identity theft and

14

fraud, and therefore, Plaintiff could not be late or past-due on a balance she does not owe.

81.     Further, Defendants reported the Account with inconsistent historical payment information.

82.     More specifically, Trans Union reported the Account as 120 days late in January 2021 and February 2021 and then reported the Account as charged off for all following months, whereas Experian reported the Account as 180 days late in January 2021 and then reported the Account as charged off for all following months.

83.     On or about June 7, 2023, Plaintiff sent letters, with the assistance of her attorneys, to Equifax, Experian, and Trans Union, respectively, disputing Defendants' ongoing reporting of the Citibank Account with a balance owed by Plaintiff (hereinafter, "June 2023 Dispute").  Please see attached true and correct copies of the Final Dispute letter labeled as Exhibit "B."

84.     More specifically, Plaintiff's June 2023 Dispute advised Equifax, Experian, and Trans Union that the underlying Alleged Debt reported on the Citibank Account did not belong to Plaintiff and requested that Defendants delete all erroneous information from her credit reports and credit files.  *See* Ex. B.

85.     In support of her June 2023 Dispute, Plaintiff enclosed a copy of the relevant police report and the billing statements showing the fraudulent charges.

86.     Equifax received Plaintiff's June 2023 Dispute.

87.     Equifax communicated Plaintiff's June 2023 Dispute to Citibank.

88.     Citibank received notice of Plaintiff's June 2023 Dispute via Equifax.

89.     On or about June 20, 2023, Equifax sent a letter in response to Plaintiff's June 2023 Dispute, purportedly verifying the Account, and continued to report the Account on Plaintiff's credit report and credit file as maintained by Equifax as owed by Plaintiff personally with a balance due in the amount of $136,149.00 and a $136,149.00 balance past-due. Please see attached true and correct copies of the Equifax's response letter labeled as Exhibit "C."

90.     Experian received Plaintiff's June 2023 Dispute.

91.     Experian communicated Plaintiff's June 2023 Dispute to Citibank.

92.     Citibank received notice of Plaintiff's June 2023 Dispute via Experian.

93.      In response to Plaintiff's June 2023 Dispute, Experian purportedly verified the Account and continued to report the Account on Plaintiff's credit report and credit file as maintained by Experian as owed by Plaintiff personally with a balance due in the amount of $136,149.00 and a $136,149.00 balance past-due, yet now reported the Account as 180 days past due in January 2021 and charged-off for all months following January 2021.

94.     Trans Union received Plaintiff's June 2023 Dispute.

95.     Trans Union communicated Plaintiff's June 202 3Dispute to Citibank.

96.     Citibank received notice of Plaintiff's June 2023 Dispute via Trans Union.

97.     On or about June 21, 2023, Trans Union sent a letter in response to Plaintiff's June 2023 Dispute, purportedly verifying the Account, and continued to report the Account on Plaintiff's credit report and credit file as maintained by Trans

Union as owed by Plaintiff personally with an updated balance due in the amount of $24,338.00 and a $4,338.00 balance past-due, as well as 120 days late in January 2021 and February 2021 and charged-off for all months following February 2021. Please see attached true and correct copies of Trans Union's response letter labeled as Exhibit "D."

98.    As of the date of this Complaint, Equifax, Experian, Trans Union, and Citibank continue to report the Citibank Account on Plaintiff's credit reports and in Plaintiff's credit files as a negative, derogatory, and adverse Account with a significant—and inaccurate—past-due balance.

## **DAMAGES**

99.    As a result of Defendants' reporting of the Alleged Debt, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account reflecting the Alleged Debt asserted as owed by Citibank if she needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

100.    As a result of Defendants' conduct, actions, and inactions, Plaintiff was denied credit and was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account with a balance past-due, she did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late

payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

101.    In fact, Plaintiff was unable to obtain a mortgage loan due to her adverse and erroneous credit history.

102.    Overall, Plaintiff suffered damage to her reputation as a result of Defendants' conduct.

103.    Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that she did not initiate or authorize the fraudulent charges, Plaintiff must simply endure Defendants' reporting of the Account and Citibank's efforts to collect a balance on the Account from Plaintiff.

104.    Plaintiff retained Swift, Isringhaus, Dubbeld & McEleney, PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>**
**(As to Citibank Only)**

Plaintiff re-alleges paragraphs one (1) through one hundred four (104) as if fully restated herein and further states as follows:

105.    Citibank is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing

inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Experian, Equifax, and TransUnion delete the Account from Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

106.    As described above,  Plaintiff was not and is not personally liable for the Alleged Debt, because: (i) Plaintiff did not personally make the fraudulent Account charges; (ii) Plaintiff did not authorize any person to make charges on the Account or on Plaintiff's behalf; (iii) Plaintiff possessed no knowledge of the Alleged Debt balance until she was denied for a mortgage based upon the reporting of the Account; (iv) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Account after May 2019; and (vi) Plaintiff completed a police report and agreed to prosecute if the party responsible for fraudulently using the Account was found.

107.    Despite Plaintiff not being responsible for the Alleged Debt, and despite Citibank receiving notice of Plaintiff's disputes from Plaintiff, Experian, Equifax, and TransUnion—including the information and documents referenced in the above paragraph—Citibank willfully and/or negligently failed to request that Experian, Equifax, and TransUnion update the tradeline associated with the Account and continued to report derogatory, late payment information to Experian, Equifax, and TransUnion including significant balances due, as significantly past-due, and as charged off.

108.    Between December 2022 and June 2023, Plaintiff repeatedly disputed Citibank's reporting of the Account to Equifax, Experian, and Trans Union, and the credit reporting agencies forwarded Plaintiff's disputes to Citibank.

109.    In total, Citibank received *at least* eleven (11) disputes from Equifax, Experian, and Trans Union regarding its reporting of the Account.

110.    The documents Plaintiff enclosed in support of her disputes included a police report and fraudulent billing statements from Citibank, originally sent to an address where Plaintiff had never lived, and containing transactions made in states Plaintiff had never visited.

111.    In response to Plaintiff's disputes, despite Citibank receiving notice of Plaintiff's disputes from Equifax, Experian, and TransUnion—including the information and documents referenced in the above paragraph— Citibank failed to request that Equifax, Experian, and Trans Union delete the Account from Plaintiff's credit reports and credit files.

112.    Instead, Citibank purportedly verified and/or updated its reporting of the Account including significant balances due and significantly past-due, with derogatory payment history.

113.    Citibank's refusal to request that Equifax, Experian, and Trans Union update their reporting of the Account as Plaintiff requested was intentionally, willfully, and knowingly done as Citibank clearly possessed knowledge that the Alleged Debt was a result of identity theft and fraud.

114.    Citibank's re-investigations were not conducted in good faith.

115.   Citibank's re-investigations were not conducted reasonably.

116.   Citibank's re-investigations were not conducted using all information and documents reasonably available to Citibank.

117.   As a result of Citibank's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

118.   Most importantly, Plaintiff was unable to obtain mortgage loan due to her adverse and erroneous credit history.

119.   Citibank's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

120.   Citibank's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

### COUNT TWO:
### FAIR CREDIT REPORTING ACT –
### VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)
### (As to Equifax, Experian, and Trans Union)

Plaintiff re-alleges paragraphs one (1) through one hundred four (104) as if fully restated herein and further states as follows:

121.   Equifax, Experian, and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

122.   Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports with respect to the Citibank Account.

123.   Specifically, despite Plaintiff *repeatedly* advising Equifax, Experian, and Trans Union that Plaintiff did not make the fraudulent charges on the Account, did not authorize any other person to make charges on the Account in her name or on her behalf, had no knowledge of the fraudulent charges until she was denied a mortgage loan, did not receive the benefit of any money, goods, or services obtained as a result of any transactions or charges made on the Account—and therefore, the Alleged Debt balance on the Account was the result of identity theft and fraud—Experian, Equifax, and TransUnion each continued to report the Account with a balance due, with a balance past-due, and with fraudulent derogatory payment history resulting in the

Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

124. Further, Experian, Equifax, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Experian, Equifax, and TransUnion credit reports and credit files.

125. For example, despite Plaintiff's repeated disputes including the identity theft police report information and credit card statements showing the fraudulent charges in multiple states in support of her ongoing dispute, Equifax, Experian, and Trans Union each failed to update and/or delete the Account from Plaintiff's credit reports and credit files in response to any of Plaintiff's disputes and none requested documents from Citibank in support of Citibank's reporting of the Account balance.

126. Despite Plaintiff notifying Equifax, Experian, and Trans Union of their reporting errors and providing documents in support of her disputes, Equifax, Experian, and Trans Union each continued to report the Account with a balance due, balance past-due, and charged off, and each subsequently published Plaintiff's credit reports to Plaintiff current creditors and/or potential future creditors including the inaccurately reported Account.

127. As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to

obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

128.   Furthermore, due to the erroneous and derogatory reporting of the Account on Plaintiff's credit reports, Plaintiff was unable to obtain a mortgage loan.

129.   Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

130.   Equifax's, Experian's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i** *et seq.*
**(As to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through one hundred four (104) as if fully restated herein and further states as follows:

131.   Experian, Equifax, and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to

conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

132. Specifically, Equifax, Experian, and Trans Union each willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

133. Overall, Plaintiff's disputes provided Equifax, Experian, and Trans Union with sufficient information and supporting documentation allowing Equifax, Experian, and Trans Union to identify that the alleged balance owed on the Account was created as a result of identity theft and fraud, and therefore, should be updated to reflect a $0 balance and/or removed from Plaintiff's credit reports and credit files.

134. For example, despite Plaintiff's repeated disputes enclosing the identity theft police report information and credit card statements showing the fraudulent charges in multiple states in support of her ongoing dispute, Equifax, Experian, and Trans Union each failed to update and/or deleted the Account from Plaintiff's credit reports and credit files in response to any of Plaintiff's disputes and none requested documents from Citibank in support of Citibank's reporting of the Account.

135. Following each of Plaintiff's disputes, Equifax, Experian, and Trans

Union continued to report the Account in Plaintiff's credit reports and files with a significant balance due as well as derogatory, late payment information.

136.   Given that Plaintiff did not personally make the fraudulent Account charges, did not authorize anyone to make fraudulent Account charges in her name, and did not benefit from any charges made on the Account after May 2019, and given that Equifax, Experian, and Trans Union did not request any documents from Citibank supporting Citibank's reporting of the Account, Equifax, Experian, and TransUnion could not reasonably verify that Plaintiff is personally responsible for the balance allegedly owed on the Account.

137.   Equifax, Experian, and TransUnion each continued to inaccurately report the Account with derogatory, late payment information, as charged-off, and with a significant balance past-due following Plaintiff's repeated disputes, causing the Account to be reported as a derogatory, negative, or adverse account.

138.   As such, Equifax's, Experian's, and Trans Union's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

139.   Such reporting is false and evidences Equifax's, Experian's, and Trans Union's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

140.   Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes were not conducted reasonably.

141.   Equifax's, Experian's, and Trans Union's reinvestigations merely copied

and relied upon the inaccurate information conveyed by Citibank.

142.   Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes were not conducted in good faith.

143.   Equifax's, Experian's, and Trans Union's reinvestigation procedures are unreasonable.

144.   Equifax's, Experian's, and Trans Union's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Equifax, Experian, and Trans Union.

145.   Equifax's, Experian's, and TransUnion's failure to review and reasonably consider all information received in Plaintiff's disputes—which clearly showed the alleged balance was created as a result of identity theft and fraud—was done in bad faith.

146.   Equifax's, Experian's, and Trans Union's reinvestigations were *per se* deficient by reason of these failures in Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes and the Account.

147.   As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, were deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account

27

being reported as a derogatory, negative, or adverse account.

148.    Furthermore, due to the erroneous and derogatory reporting of the Account on Plaintiff's credit reports, Plaintiff was unable to obtain a mortgage loan.

149.    Equifax's, Experian's, and TransUnion's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

150.    Equifax's, Experian's, and TransUnion's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FOUR:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**<u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)</u>**
**(as to Citibank only)**

Plaintiff re-alleges paragraphs one (1) through one hundred four (104) as if fully restated herein and further states as follows:

151.    Citibank is subject to, and violated the provisions of, Florida Statutes, Section 559.55(7) by collecting an alleged consumer debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

152.    Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt, because: (i) Plaintiff has not used the Citibank Account since May 2019; (ii) Plaintiff did not personally make the fraudulent Account charges; (iii)

Plaintiff did not authorize any person to make charges on the Account in Plaintiff's name or on Plaintiff's behalf; (iv) Plaintiff possessed no knowledge of the Account in until she was rejected for credit in November 2022; (v) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Account; and (vi) Plaintiff filed a police report in support of her assertion that she did not open the Account, and was willing to work with law enforcement if the person who committed the fraud is arrested.

153.   Despite Plaintiff's efforts advising Citibank that the Alleged Balance was created as a result of identity theft and fraud, Citibank sent all former billing statements to Plaintiff in an attempt to collect the Alleged Debt from Plaintiff.

154.   Citibank's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe Citibank could and would continue to attempt to collect the Alleged Debt from Plaintiff until Plaintiff paid the Alleged Debt in full.

155.   Citibank's willful violation of, inter alia, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

156.   As a direct and proximate result of Citibank's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT FIVE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**<u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)</u>**
**(as to Citibank Only)**

Plaintiff re-alleges paragraphs one (1) through one hundred four (104) as if fully restated herein and further states as follows:

157.    Citibank is subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Alleged Debt with knowledge that the Alleged Debt is not legitimately owed by Plaintiff and by asserting the existence of a legal right that Citibank knows does not exist.

158.    Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt, because: (i) Plaintiff has not used the Citibank Account since May 2019; (ii) Plaintiff did not personally make the fraudulent Account charges; (iii) Plaintiff did not authorize any person to make charges on the Account in Plaintiff's name or on Plaintiff's behalf; (iv) Plaintiff possessed no knowledge of the Account in until she was rejected for credit in November 2022; (v) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Account; and (vi) Plaintiff filed a police report in support of her assertion that she did not open the Account, and was willing to work with law enforcement if the person who committed the fraud is arrested.

159.    Despite Plaintiff's efforts advising Citibank that the Alleged Balance was created as a result of identity theft and fraud, Citibank sent all former billing statements to Plaintiff in an attempt to collect the Alleged Debt from Plaintiff.

160.    Citibank's letters and calls constitute a direct attempt by Citibank to collect the Alleged Debt from Plaintiff.

161.    Citibank does not possess the legal right to assert a balance owed on the

Alleged Debt from Plaintiff or to assert that Citibank could and would continue to hold Plaintiff personally responsible for the amount owed on the Alleged Debt.

162.   As such, Citibank attempted to collect the Alleged Debt—an amount known to be illegitimate—and asserted legal rights that do not exist in its communications with Plaintiff made in an attempt to collect the Alleged Debt.

163.   As a direct and proximate result of Citibank's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.   Judgment against Citibank, Equifax, Experian, and Trans Union for maximum statutory damages for violations of the FCRA;

b.   Judgment against Citibank declaring that Citibank violated the FCCPA;

c.   Judgment enjoining Citibank from engaging in further conduct in violation of the FCCPA;

d.   Judgment against Citibank for maximum statutory damages for violations of the FCCPA;

e.   Actual damages in an amount to be determined at trial;

f.   Compensatory damages in an amount to be determined at trial;

g.   Punitive damages in an amount to be determined at trial;

h.   An award of attorney's fees and costs; and

     i.     Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

## PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION

Plaintiff, by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), and hereby designates Aaron M. Swift, Esq. as Lead Counsel for Plaintiff.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Aaron M. Swift*
**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 0091487
Sean E. McEleney, Esq., FBN 0125561
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 300-1929
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*